SEALED

AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Louisiana

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| MICHAEL BRIAN DEPETRILLO | ) | Case No. |
| | ) | 24-MJ-131 |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____07/2017 - 01/2024_____ in the parish of _____Orleans_____ in the
____Eastern____ District of _____Louisiana_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire fraud |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

s/Emily R. Keller
_____
*Complainant's signature*

Emily R. Keller, Special Agent, Federal Bureau of Investigation
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____9/25/24_____

_____
*Judge's signature*

City and state: _____New Orleans, Louisiana_____      Hon. Karen Wells Roby, Chief U.S. Magistrate Judge
_____
*Printed name and title*

___ x  Fee
___ Process _____2cc USM
___ Dktd
___ CtRmDep
___ Doc. No

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA** <span style="color:red">**SEALED**</span>

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 24-131** |
| **v.** | * | **SECTION: MAG** |
| **MICHAEL BRIAN DEPETRILLO** | * | |
| | * * * | |

### AFFIDAVIT IN SUPPORT OF AN
### ARREST WARRANT AND A CRIMINAL COMPLAINT

I, Emily R. Keller, being first duly sworn, hereby depose and state as follows:

### AFFIANT

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since October of 2019.  My initial training consisted of an eighteen-week FBI new Agent course during which I received instruction on various aspects of federal investigations. In addition, I have earned both a Bachelor of Arts in International Studies and a Master of Public and International Affairs.

2.      Currently, I am assigned to the white-collar crime squad in the New Orleans Field Office. My duties and responsibilities include investigating complex financial crimes. Preceding my current assignment, I worked in the Charlotte Division, Greensboro Resident Agency, for three

years. Prior to becoming a Special Agent of the FBI, I worked as a Staff Operations Specialist, investigative analyst, for the FBI for over four years.

3.    In my capacity as a Special Agent, I have been involved with numerous investigations related to financial crimes and other violations of Title 18 of the United States Code. I am familiar with, and have employed, investigative techniques used in these investigations. Moreover, I am a federal law enforcement officer who is engaged in enforcing criminal laws, including Title 18, United States Code, Section 1343.

## PURPOSE OF AFFIDAVIT

4.    This affidavit is made in support of a criminal complaint and arrest warrant for Michael Brian DEPETRILLO ("DEPETRILLO" or the "SUBJECT PERSON"), date of birth October 17, 1981, for violation of Title 18, United States Code, Section 1343, wire fraud. The statements in this affidavit are based on my personal knowledge, as well as information I have received from other persons with knowledge of the relevant facts. Since this affidavit is being submitted for the limited purpose of supporting a criminal complaint. I have not included each and every fact known to me concerning this investigation.

## FACTUAL SUMMARY

5.    Since December 2023, the FBI has been conducting an investigation regarding a commodities investment fraud scheme conducted by DEPETRILLO, who collected over $9.2 million in investment funds from over 50 investors, from July 2017 to December 2023, based on false representations he would invest their money in low-risk investment commodities with guaranteed rates of return.

6.     The FBI initiated the investigation into DEPETRILLO after a complainant alleged DEPETRILLO and his associated business, Meteor, LLC ("METEOR"),[1] engaged in securities investment fraud. On September 29, 2023, the complainant, a North Dakota-based attorney, submitted an online tip to the FBI National Threat Operations Center on behalf of his client, a resident of Minnesota. According to the complainant, DEPETRILLO falsely promised a return on investments made by his client.

7.     On October 19, 2023, two individuals residing in North Dakota, identified by the complainant as possible victims in DEPETRILLO's scheme, filed a Complaint for Damages with the United States District Court for the Eastern District of Louisiana against DEPETRILLO and METEOR (Civil Action No. 2:23-cv-6408). The plaintiffs alleged DEPETRILLO assured them he developed a low-risk strategy to earn in foreign exchange and/or derivative markets, promised a loss of no more than 5% of their investments over the course of one month and positive returns regardless of general market conditions, and guaranteed a 20% match of their deposits by a related broker.

8.     Through the course of the FBI's investigation, information provided by DEPETRILLO's investors (the "Victim Investors") and financial record analysis revealed there is probable cause DEPETRILLO, through his businesses, METEOR, NOLA FX Capital

---

[1] Meteor, LLC ("METEOR") was incorporated with the Louisiana Secretary of State on March 25, 2008. On May 16, 2014, the business registration was revoked. On March 30, 2015, the business registration was reinstated. METEOR's reported address was 5500 Prytania Street, #240, New Orleans, Louisiana 70115. According to financial and communication records, DEPETRILLO, a resident of New Orleans, Louisiana, is the owner, "CEO," and "Head Trader" of METEOR.

Management, LLC ("NOLA FX CAPITAL"),[2] and ELC Enterprise Solutions, LLC ("ELC")[3] (the "SUBJECT BUSINESSES"), operated a Ponzi scheme.[4]

9.      DEPETRILLO claimed he was investing funds, provided to him by Victim Investors through the execution of trades in the foreign currency exchange, or "FOREX."[5] Additionally, DEPETRILLO solicited funds from several Victim Investors to invest in a gold futures option. DEPETRILLO did not invest Victim Investors' money as promised. Instead, he used these funds to pay fake "returns" to other investors as part of the Ponzi scheme, to fund brokerage accounts DEPETRILLO managed and traded in for his personal gain, and to pay for his gambling and other personal expenses.

### *NOLA FX FUND, L.P.*

10.      According to informational presentations DEPETRILLO provided several Victim Investors, DEPETRILLO purported NOLA FX FUND was an investment fund focused on currency trading in the foreign exchange markets. DEPETRILLO promised Victim Investors monthly returns, of which Victim Investors could review through weekly or monthly statements. Furthermore, DEPETRILLO guaranteed a no "lock in" period. He promised to provide account

---

[2] NOLA FX Capital Management, LLC ("NOLA FX CAPITAL") was incorporated with the Louisiana Secretary of State, on January 24, 2017, as NOLA FX Fund, LLC ("NOLA FX FUND"). On February 13, 2017, the business name was changed to NOLA FX CAPITAL. On March 31, 2019, the business was dissolved. NOLA FX CAPITAL's reported address was 12 Hawk Street, New Orleans, Louisiana 70124. According to the business filing, DEPETRILLO was a registered agent and officer.

[3] ELC Enterprise Solutions, LLC ("ELC") was incorporated with the Louisiana Secretary of State on May 4, 2018. On October 19, 2019, the business filing was dissolved. ELC's reported address was 201 St. Charles Avenue, Suite 114-315, New Orleans, Louisiana 70170. According to financial records, DEPETRILLO is the authorizing representative.

[4] In a Ponzi scheme, multiple victims are defrauded over the course of months or years, and the perpetrator forestalls discovery of the scheme by using newer victims' money to pay back earlier-in-time victims. Payouts give the impression of a legitimate, money-making enterprise behind the fraudster's story, but in reality, investors are the only source of funding and the perpetrator also siphons off investor funds for their own personal gain.

[5] The foreign exchange market or FOREX is a global decentralized market for the trading of currencies. This market determines the foreign exchange rates for every currency.

funds to several Victim Investors no later than 30 days and other Victim Investors no later than 60 days after submission of a request to withdraw funds.

11.     DEPETRILLO highlighted the benefits of foreign currency trading. He emphasized a "liquid" financial market, enabling assets to be transacted at stable prices; volatility in the foreseeing exchange market, enabling traders to take advantage of exchange rate fluctuations; and a large foreign exchange market, inhibiting one single entity from controlling the market price for an extended period of time. DEPETRILLO referred to examples of a "USD/JPY" option contract trade yielding a 7% return and a "EUR/GBP" option contract trade yielding a 5.1% return.

12.     DEPETRILLO provided the below organizational chart or "legal structure" for the NOLA FX FUND, whereby METEOR is represented as the manager for the NOLA FX FUND, comprised of several limited partners.



13.     As part of contractual agreements with several Victim Investors, DEPETRILLO guaranteed a monthly return on Victim Investors' investments, reflected in weekly or monthly statements. Additionally, DEPETRILLO applied a quarterly management fee of 0.25% and a

biannual performance fee of 15% above a hurdle rate of 20%.[6] DEPETRILLO claimed investors' funds were secure, since there was a monthly loss limit of 5%.

14.    DEPETRILLO requested Victim Investors submit payment for their initial investment via wire transfer to METEOR's JPMorgan Chase Bank ("Chase Bank") account. In a later version of the informational presentation, DEPETRILLO directed Victim Investors to fund their accounts with the NOLA FX FUND via wire transfer, Zelle,[7] Apple Cash,[8] Venmo[9] or cryptocurrencies.[10]

15.    The FBI is conducting an ongoing review of the financial accounts DEPETRILLO, through the SUBJECT BUSINESSES, used to receive Victim Investor payments; these accounts, two in total, are located at Chase Bank. On May 4, 2015, DEPETRILLO opened a Chase Bank account on behalf of METEOR. In the last available statement for this account, on November 2, 2023, Chase Bank charged off $2,526.55. In or around May 2018, DEPETRILLO opened a Chase Bank account on behalf of ELC. In the last available statement for this account, for the time period of August 1, 2023 through August 31, 2023, the ending balance in the account is $0. DEPETRILLO was the only signatory on both accounts.

16.    The FBI's preliminary review of these financial accounts conclude DEPETRILLO and his SUBJECT BUSINESSES used Victim Investor funds to provide payment to other investors and to pay for personal expenses, consistent with a Ponzi scheme.

---

[6] The hurdle rate is a predetermined level of return a fund must meet to return a performance fee, in this case, of 15%.
[7] Zelle is a United States-based digital payments network run by a private financial services company owned by Bank of America, Truist, Capital One, JPMorgan Chase, PNC Bank, U.S. Bank, and Wells Fargo.
[8] Apple Cash is a digital card used to send and receive money from others in the Messages app, or to fund other Apple Pay transactions.
[9] Venmo is a mobile app for peer-to-peer money transfers and payments.
[10] Cryptocurrency is a digital or virtual currency that is secured by cryptography. Cryptocurrencies are decentralized networks based on blockchain technology, which is a distributed ledger enforced by a disparate network of computers.

17.     The following are examples of individual Victim Investors who were defrauded by DEPETRILLO. The Victim Investors interviewed by the FBI never had an attorney-client relationship with DEPETRILLO.

### *Victim Investor 1*

18.     Between December 2020 and December 2023, Victim Investor 1, a resident of Buffalo, New York, sent DEPETRILLO $1,165,334.08, through check deposits and wire transfers, to METEOR's Chase Bank account, DEPETRILLO's Venmo account, and DEPETRILLO's Capital One Bank account. Between October 7, 2022 and January 3, 2024, Victim Investor 1 received $197,000, in total, from METEOR's Chase Bank account, ELC's Chase Bank account, DEPETRILLO's Chase Bank account, and DEPETRILLO's Ally Bank account.

*Foreign Currency Trading*

19.     On February 1, 2024, Victim Investor 1 was interviewed by FBI Agents. Victim Investor 1 advised he met DEPETRILLO through his friend, who had previously invested with DEPETRILLO. Through discussions with DEPETRILLO, Victim Investor 1 learned DEPETRILLO traded in foreign currency exchange, mostly the U.S. Dollar, British Pound, Japanese Yen, and sometimes the Australian Dollar. DEPETRILLO managed his investment fund through NOLA FX and METEOR. All investor funds are commingled in one fund, which allows DEPETRILLO to trade in one lump sum. Initially, Victim Investor 1 invested approximately $100,000 with DEPETRILLO. Victim Investor 1 received monthly account statements, with personalized trading activity for his investment. DEPETRILLO provided Victim Investor 1 approximately 3% to 6.5% return on his investments, a higher rate of return than his average investors, for referring investors.

20.     Victim Investor 1 advised, at first, DEPETRILLO used trading platform GAIN Capital for his trading activity. On November 9, 2022, DEPETRILLO, using mikedepetrillo@gmail.com, forwarded Victim Investor 1 an email from mdepetrillo@nolafxfund.com received from GAIN Capital, email address forex@gaincapital.com, on November 8, 2022. The email from GAIN Capital contains Victim Investor 1's purported account statement, dated November 8, 2022. The account balance is purportedly $1,693,701.13.

21.     Neither DEPETRILLO nor NOLA FX CAPITAL are currently registered as a Commodity Pool Operator ("CPO")[11] with the National Futures Association ("NFA").[12] In September 2017, the NFA approved NOLA FX CAPITAL as a CPO and FOREX firm and approved its NFA membership. In NFA's records, DEPETRILLO was the Principal for NOLA FX CAPITAL, NFA Associate Member, and FOREX Associate Person. In December 2017, NOLA FX CAPITAL's CPO and FOREX firm status, and membership, were withdrawn from the NFA.

22.     During Victim Investor 1's interview with Agents, he advised in July 2023 he requested to withdraw approximately $100,000 from his account with the fund. DEPETRILLO issued Victim Investor 1 a check, which bounced.

---

[11] A Commodity Pool Operator is an individual or organization that operates a commodity pool and solicits funds for that commodity pool. A commodity pool is an enterprise in which funds contributed by a number of persons are combined for the purpose of trading futures or options on futures, retail off-exchange forex contracts, or swaps, or to invest in another commodity pool. The Commodity Exchange Act and Commodity Futures Trade Commission ("CFTC") regulations require that individuals such as DEPETRILLO, who operate commodity pools and who function as commodity pool operators, register as a commodity pool operator with the CFTC.
[12] The National Futures Association ("NFA") is the self-regulatory organization for the U.S. futures and derivatives markets. It is headquartered in Chicago. The NFA has a crucial role in safeguarding the integrity of the derivatives market and protecting investors. It enforces a comprehensive set of rules and regulations, provides educational resources, and ensures transparency in the market.

23.    Victim Investor 1 provided Agents an email he received from DEPETRILLO, using mikedepetrillo@gmail.com, on August 4, 2023, whereby DEPETRILLO sent records of the wire transfers from the "old broker" to the "new broker." Victim Investor 1 informed Agents DEPETRILLO told him GAIN Capital's service was not great, so DEPETRILLO transferred the NOLA FX FUND to Trader's Way, a similar service.

24.    Agents reviewed the two documents attached to the email, of which DEPETRILLO purported to be Chase Bank wire transfer records. One record identified an incoming wire transfer of $12,043,032.10 from "GAIN FX Capital" into METEOR's Chase Bank account. The purported posted date is April 31, 2023, a date that does not exist. A review of the cited account determined there is no record of this transaction held by Chase Bank.



The second record identified an outgoing wire transfer of $12,043,032.10 from METEOR's Chase Bank account to "TRADERSWAY." The posted date is May 3, 2023. A review of the cited account determined there is no record of this transaction held by Chase Bank.

25.    In Victim Investor 1's FBI interview, he told Agents that DEPETRILLO went on a "margin" with the fund's trades. This allowed him to trade up to 500 times the intended trading amount. DEPETRILLO informed Victim Investor 1, if the market went 50% above the margin

call,[13] the investors could lose their money. DEPETRILLO requested approximately $30,000 from Victim Investor 1 to prevent losing money in the fund.

26.      When Victim Investor 1 learned this information, he was frustrated with DEPETRILLO. He thought DEPETRILLO was trading outside of the terms of their contract. Regardless, he loaned DEPETRILLO approximately $24,800 to prevent losing money. Following this activity, around December 2023, DEPETRILLO advised he needed an additional $467,000 to buy the "margin out" with Trader's Way, in order for NOLA FX and METEOR's fund to close all margin positions and be entirely liquid. The entirety of the fund was purportedly approximately $11 million. On December 7, 2023, DEPETRILLO received a wire transfer in the amount of $467,534.08 from Victim Investor 1. This transaction crossed interstate lines.

27.      Victim Investor 1 provided Agents the below email DEPETRILLO, using mikedepetrillo@gmail.com, forwarded to him on November 22, 2023. The forwarded email is from TW Corp., email address support@tradersway.com, to DEPETRILLO, sent on November 17, 2023. In the email, the Trader's Way Accounting Department provides information regarding a margin call and a margin buyout.

---

[13] A margin call occurs when the percentage of an investor's equity in a margin account falls below the broker's required amount. An investor's margin account contains securities or commodities bought with a combination of the investor's own money and money borrowed from the investor's broker. A margin call specifically refers to a broker's demand that an investor deposit additional money or securities or commodities into the account so that the value of the investor's equity (and the account value) rises to a minimum value indicated by the maintenance requirement.

**From:** Michael DePetrillo <mikedepetrillo@gmail.com>
**Date:** November 22, 2023 at 2:14:02 PM EST
**To:**
**Subject: Fwd: Margin Position**

Sending this again from my desktop this time. I can see the email addresses below. Let me know if you can't.

Mike

---------- Forwarded message ---------
From: **TW Corp.** <support@tradersway.com>
Date: Fri, Nov 17, 2023 at 12:52 PM
Subject: Margin Position
To: Michael DePetrillo <mikedepetrillo@gmail.com>

Mr. DePetrillo,

In follow up to our phone call, please see the information requested regarding the margin positions. Regulations do not permit me to send an email directly to anyone other than the account holder even with authorization. You may forward this as needed.

Margin Positions: 30,000 lot EUR/USD, 35,000 lot EUR/USD and 27,000 lot AUD/USD

The margin call for today is $30,000. The margin buyout is $489,035.20. If the margin call is paid today, this amount will be reduced to $459,035.20.

Please note that the margin call must be received today or 13.4% of the positions will be closed out.

Best Regards,

Accounting Department



28.     Victim Investor 1 provided Agents an email he received from DEPETRILLO, using mikedepetrillo@gmail.com, on November 27, 2023. Included in the email, was the below screenshot of METEOR's Trader's Way account, with a balance of $11,329,409.81.



29.    On February 26, 2024, the FBI sent a request for information to TW Corp., doing business as Trader's Way, requesting any and all accounts held by Trader's Way for DEPETRILLO and his SUBJECT BUSINESSES. On the same date, Trader's Way confirmed DEPETRILLO utilized two accounts with Trader's Way, account numbers 48227 and 237799, and DEPETRILLO used mikedepetrillo@gmail.com to create the accounts. Between June 2015 and April 2016, DEPETRILLO replenished account number 48227 with several deposits, totaling $7,750, via credit cards and Moneybookers,[14] and made several withdrawals, totaling $1,825, via credit cards. Between December 2017 and June 2021, DEPETRILLO replenished account number 237799 with several deposits, totaling $84,600, via credit cards, Bitcoin,[15] Upay,[16] Instacoins,[17]

---

[14] Moneybookers is a payment processing company.
[15] Bitcoin is a cryptocurrency or virtual currency.
[16] Upay is a digital wallet that enables the user to make payments and receive rewards.
[17] Instacoins is a digital currency provider specializing in the sale and transfer of cryptocurrency and bitcoins.

and PayRedeem.[18] DEPETRILLO made several withdrawals, totaling $19,753.50, from account number 237799, via Bitcoin, Upay, and credit cards. Trader's Way advised the ending cumulative balance across both of DEPETRILLO's accounts was $3.87.

30.     Victim Investor 1 told Agents, after some time had passed, he requested the $467,000 back from DEPETRILLO. DEPETRILLO told him that he had to open an account with Ally Bank for METEOR, because Trader's Way would only provide the funds in the form of cryptocurrency, and Ally Bank was willing to accept cryptocurrency.

31.     Victim Investor 1 showed Agents text messages between Victim Investor 1 and DEPETRILLO, telephone number (504) 400-5128, on Victim Investor 1's cell phone. On December 27, 2023, DEPETRILLO explained to Victim Investor 1 that he has $267,000 in cryptocurrency and Trader's Way is sending funds in $100,000 "waves." DEPETRILLO explained he is in the process of converting the money to dollars.

32.     According to Trader's Way records, no withdrawals from DEPETRILLO's accounts were conducted after May 2021.

33.     Victim Investor 1 provided Agents the below email he received from DEPETRILLO, using mikedepetrillo@gmail.com, on January 12, 2024. In the email, DEPETRILLO requests an in-person meeting with Victim Investor 1.

---

[18] PayRedeem is an online payment method popular as a funding method for FOREX brokers.

**From:** Michael DePetrillo <mikedepetrillo@gmail.com>
**Date:** January 12, 2024 at 9:31:12 AM CST
**To:** ███████████████████████████
**Subject: Next Week**

I almost have this all straightened out. I know how concerning this probably is to you, but I can promise you that the funds are on the way. I had a legal wrench thrown into all of this by one of the other investor groups. I am going to come to Buffalo on Wednesday if that works. I'd rather us sit down face-to-face and clear everything up. You'll have the money before then and we can also work on the plan for giving everyone else their distributions.

Mike

Victim Investor 1 advised Agents DEPETRILLO did not travel to Buffalo as mentioned in his email.

34.    Victim Investor 1 provided Agents the below email he received from DEPETRILLO, using mikedepetrillo@gmail.com, on January 26, 2024. In the email, DEPETRILLO advises he is meeting with Trader's Way in person in "DR."

**From:** Michael DePetrillo <mikedepetrillo@gmail.com>
**Date:** January 26, 2024 at 7:04:27 AM CST
**To:** ███████████████████████████
**Subject: Follow Up**

I am meeting with Traders Way in person in DR today. Per my last email that's why I could not get to NY. Answers are coming I promise. I also understand you can't hold people off. God knows you have done enough. I just need a few more days hopefully.

Mike

35.    According to an Internet search, Trader's Way is headquartered in the Commonwealth of Dominica. "DR" is the known abbreviation for the Dominican Republic. A search of U.S. Customs and Border Protection's foreign travel records for DEPETRILLO,

conducted on February 25, 2024, did not identify any foreign travel for DEPETRILLO after March 2021.

36.    Victim Investor 1 provided Agents an email he received from DEPETRILLO, using mikedepetrillo@gmail.com, on November 19, 2023. Attached to the email is a "Meteor Investor List," whereby Victim Investor 1's account balance is $2,254,904.90.

*Gold Futures Option*

37.    In the previously referenced FBI interview, Victim Investor 1 advised Agents he invested in a gold futures option purchase with DEPETRILLO. Victim Investor 1 funded his investment with money in his IRA account. He anticipated quickly replenishing his IRA with the returns on his investment, so he would not incur penalty fees.

38.    Victim Investor 1 provided Agents an email he received from DEPETRILLO, using mikedepetrillo@gmail.com, on April 25, 2023. The email contains an attachment with a "Gold Futures Option Contract" signed by DEPETRILLO and Dominick Impastato ("Impastato") on April 25, 2023. In the contract, Victim Investor 1, DEPETRILLO, and an additional investor are identified as "purchasers." The "purchasers" agree to pay a combined total of $375,000 to the "seller," Impastato, for the allocation of gold futures options.

39.    On March 7, 2024, Impastato, a resident of New Orleans, Louisiana, was interviewed by FBI Agents. Impastato advised he does not know Victim Investor 1. Impastato remembered DEPETRILLO worked at Jones Walker, L.L.P. Impastato may have dealt with DEPETRILLO while working with discovery on a case. This would have been their only interaction. Impastato has never heard of the SUBJECT BUSINESSES. He has never owned gold futures options. He does not participate in commodity trading.

40.    Agents showed Impastato the "Assignment of Gold Futures Option Contract." After reviewing the document, Impastato advised he has never seen this document and did not sign it. The signature of Impastato's name on the document is not how he signs his signature. He always uses his full name, "Dominick F. Impastato III," in professional and personal documents. He does so because he is proud of his name. He also does not want to be confused with his father, Dominick Impastato Jr.

41.    A review of DEPETRILLO's business and personal bank accounts did not identify any payments made to Impastato, confirming Impastato's statements that he has no business or other affiliation with DEPETRILLO.

42.    Victim Investor 1 explained to Agents DEPETRILLO provided a check in the amount of $200,000, dated June 23, 2023, for deposit into Victim Investor 1's IRA account. The check bounced. Victim Investor 1 will have to pay approximately $66,000 in taxes for this withdrawal from his IRA.

43.    Agents reviewed an audio recording of a meeting between Victim Investor 1, DEPETRILLO, and an additional New York-based investor. The meeting was held in New Orleans on or around August 4, 2023. During the meeting, Victim Investor 1 requests to discuss the gold futures option status, since the tax liability is "crushing." The other investor questions DEPETRILLO about the gold futures option investment and COMEX's[19] involvement. DEPETRILLO references the purchase of the gold futures option from his "buddy," referencing Impastato. The following conversation ensues:

DEPETRILLO:        COMEX isn't involved in this though.

---

[19] The Commodity Exchange Inc. ("COMEX") is the primary futures and options market for trading metals such as gold, silver, copper, and aluminum.

| | |
|---|---|
| Victim Investor 1: | But I thought COMEX was on my statement? |
| DEPETRILLO: | That's the the the um the reference number has a COMEX statement because it's using their agreement. |
| Victim Investor 1: | So so so they're using COMEX as a platform? |
| DEPETRILLO: | Like their underlying agreement in terms of how the option works but it's not this wasn't done through COMEX but COMEX is like it's a industry standard. |
| Other Investor: | But this was done through whom? |
| DEPETRILLO: | Through a a a company in China. |
| Other Investor: | Do they have a name? |
| DEPETRILLO: | Yeah Bomono Shanghai something b-o-m-o-n-o and it was from the Shanghai gold exchange but that's I mean that's like Nasdaq right that's like in theory but that's what you know I'm trying to get to the bottom of that. |
| Victim Investor 1: | So the company all looks legitimate your your your buddy bought it from that company. |
| DEPETRILLO: | And sold it to us right I don't think my buddy did anything like on his end knowing you know what I mean like I but again he like recourse against him is a potential avenue too you know but that would be harder because I'd have to you'd have to prove that he knew like that it was if it turns out that it's fraudulent or whatever you know. |

17

| | |
|---|---|
| Other investor: | What are you talking about he sold you gold, he sold you an option he of course [unintelligible] dude you sold me something that doesn't exist. |
| DEPETRILLO: | Yeah I know that's the argument but yeah. |
| Other investor: | Why would you sell me something that doesn't exist? So. |
| Victim Investor 1: | Well you have to prove that he knew it didn't exist. |
| DEPETRILLO: | His his thing will be well I bought it I didn't know and now you bought it from me so you go after them. I'm hoping we don't like again just having litigated that's that's that's a long long road.so I'm hoping um. |
| Victim Investor 1: | Well even litigating a company in China is a long road. |
| DEPETRILLO: | But that would be yeah just good luck. |

44.    During this conversation, Victim Investor 1 and the other investor question DEPETRILLO about the purchase of the gold futures option and the validity of the purchase. DEPETRILLO clarifies he did not make the purchase through COMEX, instead from his "buddy," referring to Impastato, who purchased the gold futures option from a company in China. DEPETRILLO discusses possible litigation if the purchase is determined to be fraudulent.

### *Victim Investors 2, 3 and 4*

45.    Three other investors were subject to a similar scheme as Victim Investor 1.

46.    On January 8, 2024, FBI Agents interviewed Victim Investor 2. Victim Investor 2 advised, in 2022, DEPETRILLO offered Victim Investor 2 an opportunity to invest in the foreign currency exchange market. Victim Investor 2 accepted the offer and made an initial investment of approximately $50,000 and at least $300,000 more between November 2022 and March 2023. He received weekly statements containing individual trade information as well as profit amounts from DEPETRILLO.

47.    Victim Investor 2 provided several account statements to Agents. Victim Investor 2 received the statements from "Meteor FX Capital Client Services," via statements@nolafxfund.com.

48.    Victim Investor 2 provided Agents the below email he received from DEPETRILLO, using mikedepetrillo@gmail.com, on July 19, 2023.

Hey guys,

I want to send an update on where we are with this gold option cash out. There is no reason to panic but we will need additional time. Chase informed me that the check was not honored by HSBC-Hong Kong. I am still trying to get details around this and frankly it doesn't make sense to me.

I have been in touch directly with the gold exchange. They are responding and have said they will remedy this ASAP. I had my attorney reach out to stress the time sensitive nature of this. We have a call tonight at 11pm as the exchange is located in China.

My hope is that they will simply wire the funds to us and we will be done with this.

In the meantime, we are also selling positions that are traded in our company account so we can get both of you paid as quickly as possible. While I don't anticipate any issue with the exchange, in the event that happens and given the delay so far, we will deal with it on my end. We put in the order to close the positions today. I will have a date on the funds availability tomorrow.

I am flying at the moment but will reach out with another update later. This is incredibly embarrassing for me and I am going to do everything in my power to get it worked out soon.

Mike

49.    When DEPETRILLO failed to provide the return on Victim Investor 2's investment with funds from his retirement account, he promised to compensate Victim Investor 2 for the penalty fees. When he failed to do so, Victim Investor 2 had to borrow $300,000 to avoid approximately $130,000 in penalties. Victim Investor 2 has been unable to reach DEPETRILLO since September 2023.

50.    In the first half of 2023, Victim Investor 3 sent DEPETRILLO $150,000, in total, through wire transfers.

51.    On January 9, 2024, FBI Agents interviewed Victim Investor 3. Victim Investor 3 advised in early 2023 his friend, Victim Investor 2, informed him of an investment opportunity with DEPETRILLO and METEOR. Victim Investor 3 understood the investment to be in foreign exchange currency. Victim Investor 3 thought this investment would be "safe" and invested $50,000 via wire transfer on February 7, 2023.

52.    In addition to his initial investment, between February 10, 2023 and June 9, 2023, Victim Investor 3 wired METEOR and ELC, approximately $100,000. Victim Investor 3 showed

Agents several texts messages he received from DEPETRILLO's telephone number, (504) 400-5128, requesting he invest additional funds or refer others to invest, during this time frame.

53.     Initially, Victim Investor 3 received weekly account statements from DEPETRILLO indicating a profit of approximately $2,000. Statements purportedly were received on Fridays via email and contained individual trade information and profits. Victim Investor 3 believed DEPETRILLO was good at trading and making money. Victim Investor 3's account statements indicated he had approximately $290,000 available.

54.     In July 2023, Victim Investor 3 made a request to DEPETRILLO for a withdrawal of $50,000 from his account. Victim Investor 3 received $5,000 on July 14, 2023. Victim Investor 3 called DEPETRILLO to set up a second $50,000 withdrawal for the first week in September 2023. The September payment would also include the remaining $45,000 from the July withdrawal totaling $95,000. Victim Investor 3 did not receive any payment in September 2023 and to date has only received the $5,000 payment.

55.     On January 8, 2024, FBI Agents interviewed Victim Investor 4. In February 2023, Victim Investor 4 wired DEPETRILLO $200,000.  On February 24, 2023, DEPETRILLO texted Victim Investor 4 and requested to email him information about his "forex hedge fund." DEPETRILLO also texted him, from telephone number (504) 400-5128, instructions for wiring funds to invest with him.

56.     DEPETRILLO emailed Victim Investor 4 a slide presentation containing information about DEPETRILLO's NOLA FX CAPITAL's investment fund, NOLA FX FUND, managed by METEOR.

57.     Victim Investor 4 provided Agents emails he received from DEPETRILLO, using mikedepetrillo@gmail.com, and "Media FX Client Services," from statements@nolafxfund.com,

on March 3, 2023. In the emails, Victim Investor 4 is provided his February 2023 monthly account statement. DEPETRILLO advises all statements will come from statements@nolafxfund.com.

58.    Victim Investor 4 received several statements from DEPETRILLO via email depicting the status of his investment.

59.    Victim Investor 4 advised Agents someone named Emily LNU ("Emily") is referenced in email communication with DEPETRILLO. Victim Investor 4 believes DEPETRILLO is purporting to be Emily. Victim Investor 4 provided Agents a copy of an email from DEPETRILLO, using mdepetrillo@nolafxfund.com, to Emily, Meteor FX Audit Specialist, forwarded from withdrawals@nolafxfund.com, dated May 24, 2023. In the email, DEPETRILLO requested Emily provide Victim Investor 4 with the date his funds will be released and his final account breakdown. Following this email, Emily emailed Victim Investor 4 informing him of his account closure.

60.    Victim Investor 4 last heard from DEPETRILLO on July 17, 2023.

### DEPETRILLO's Employment and Locations of the SUBJECT BUSINESSES

61.    On October 18, 2007, DEPETRILLO was admitted to the Louisiana State Bar Association (LSBA). As of September 12, 2023, DEPETRILLO's LSBA status is "not eligible." Specifically, he is ineligible for noncompliance with trust account registration requirements, unpaid bar dues, and unpaid disciplinary dues. According to DEPETRILLO's LinkedIn profile, he began employment as an attorney with Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P. in September 2007. Based on a review of Louisiana Workforce Commission records, from March 2019 until March 2021, DEPETRILLO received wages from Ochsner Clinic Foundation.

62.     DEPETRILLO does not operate the SUBJECT BUSINESSES from the locations registered with the Louisiana Secretary of State. During an FBI interview of Victim Investor 1, Victim Investor 1 advised DEPETRILLO told him that he works from a room in his house.

63.     Internet searches for the addresses related to the SUBJECT BUSINESSES confirmed DEPETRILLO does not operate the SUBJECT BUSINESSES from the locations registered with the Louisiana Secretary of State.

64.     An Internet search for METEOR's address, 5500 Prytania Street, #240, New Orleans, Louisiana 70115, identified Prytania Mail Services, LLC as the business operating at this location.

65.     A search of the City of New Orleans GIS for NOLA FX CAPITAL's address, 12 Hawk Street, New Orleans, Louisiana 70124, identified a single-family residence owned by an individual other than DEPETRILLO.  DEPETRILLO does not reside at this address.

66.     An Internet search for ELC's address, 201 St. Charles Avenue, Suite 114-315, New Orleans, Louisiana 70170, identified Place St. Charles, a shared office building, at this location. According to Place St. Charles' website, ELC is not a tenant in this building. Furthermore, Jones Walker, L.L.P., DEPETRILLO's previous employer, is a tenant.

## **PROBABLE CAUSE**

67.     Based on the foregoing, I respectfully submit there is probable cause to believe that on or about July 27, 2017, continuing up to and including on or about January 3, 2024, Michael Brian DEPETRILLO, for the purpose of executing and attempting to execute the above-described scheme, knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, in violation of Title 18, United States Code, Section 1343.

*Pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3), the undersigned judicial officer has on this date considered the information communicated by reliable electronic means in considering whether a complaint, warrant, or summons will issue. In doing so, I have placed the affiant under oath, and the affiant has confirmed that the signatures on the complaint, warrant, or summons and affidavit are those of the affiant, that the document received by me is a correct and complete copy of the document submitted by the affiant, and that the information contained in the complaint, warrant, or summons and affidavit is true and correct to the best of the affiant's knowledge.*

Respectfully submitted,

*s/Emily R. Keller*
Emily R. Keller
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on _____9/25/24_____, 2024.

HONORABLE KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE

24